B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS ASSOCIATED CREDIT UNION | DEFENDANTS CHIMWEMWE KEITH ELIAD KAMWANA |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Thompson,O'Brien, Kemp & Nasuti, P.C.<br>40 Technology Pkwy South, Suite 300<br>Peachtree Corners, Georgia 30092 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>□ Debtor □ U.S. Trustee/Bankruptcy Admin<br>■ Creditor □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>■ Debtor □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) AND (a)(6)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $6,405.89 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>CHIMWEMWE KEITH ELIAD KAMWANA | BANKRUPTCY CASE NO.<br>19-59976-SMS | | |
| DISTRICT IN WHICH CASE IS PENDING<br>NORTHERN DISTRICT OF GEORGIA | DIVISION OFFICE<br>ATLANTA | | NAME OF JUDGE<br>SAGE M. SIGLER |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br>August 13, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>ALBERT F. NASUTI | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re | § | CASE NO. 19-59976-SMS |
| | § | |
| CHIMWEMWE KEITH ELIAD KAMWANA, | § | CHAPTER 7 |
| Debtor. | § | |
| | § | HON. SAGE M. SIGLER |
| _____ | § | _____ |
| | § | |
| | § | |
| ASSOCIATED CREDIT UNION, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CHIMWEMWE KEITH ELIAD KAMWANA, | § | |
| Defendant. | § | |

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A) AND (a)(6)

**COMES NOW** Associated Credit Union (hereinafter "ACU"), a creditor and party in interest in the above-captioned matter, and files this Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) (hereinafter the "Complaint") against CHIMWEMWE KEITH ELIAD KAMWANA (hereinafter "Defendant"), and shows this Court as follows:

### JURISDICTION

1.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523.

2.

Defendant filed Chapter 7 Bankruptcy Case No. 18-60674-SMS on June 27, 2018.  The case

was dismissed on January 30, 2019.[1]  Defendant filed his first Chapter 13 Bankruptcy Case No. 19-

54992-SMS on June 27, 2019.  The case was dismissed on April 23, 2019.  The Debtor filed his

second and current Chapter 13 Bankruptcy Case on June 27, 2019.

3.

Defendant may be served with process in this Adversary Proceeding by mailing a copy of

the Summons and Complaint by First Class U.S. Mail, postage pre-paid, at 407 Sawyer Meadow

Way, Grayson, Georgia 30017, or by such other means as may be permitted by Rule 7004 of the

Federal Rules of Bankruptcy Procedure.

## FACTS RELEVANT TO ALL COUNTS

4.

On or about March 16, 2018, Defendant submitted a Membership Application to ACU.

Defendant represented that his Social Security Number ended in the digits -2918.  Based upon that

representation, Defendant gained membership in ACU.  A true and correct copy of the Membership

Application is attached hereto and incorporated herein as Exhibit "1".

5.

Also on or about March 16, 2018, Defendant applied for, and was approved for, a loan through

Infiniti Financial Services ("hereinafter "IFS") for the purpose of purchasing a 2015 Infiniti Q50,

Vehicle Identification No. JN1BV7APXFM337780 (hereinafter the "Vehicle"), from Infiniti of

---

[1] During the Chapter 7 case, ACU filed a similar Complaint to Determine Dischargeability of Debt, thereby commencing Adversary Proceeding No. 18-05242-SMS.  The adversary proceeding was dismissed on January 31, 2019, following the dismissal of the Chapter 7 case.

Gwinnett (hereinafter the "Dealership"). Defendant represented that his Social Security Number ended in the digits -2918. The loan was approved based upon the credit worthiness of a credit score attached to Social Security Number ending in -2918. A true and correct copy of the credit application is attached hereto and incorporated herein as Exhibit "2".

6.

On or about March 16, 2018, Defendant and the Dealership entered into a Retail Installment Sale Contract (hereinafter the "Contract") to purchase the Vehicle for $22,421.25, not including registration, a service contract, and other ancillary costs. Defendant financed $23,564.25 to purchase the vehicle which, pursuant to the terms of the Contract, was to be repaid with interest at the rate of 4.99% per annum through 72 monthly installments of $379.39 each beginning April 15, 2018. A true and correct copy of the Contract is attached hereto and incorporated herein as Exhibit "3".

7.

The Dealership subsequently assigned the Contract to ACU and, on or about April 12, 2018, ACU remitted loan proceeds in the amount of $23,564.25 to the Dealership.

8.

On or about April 12, 2018, ACU perfected its lien on the Vehicle by having its lien recorded on the certificate of title (hereinafter the "Title"). A true and correct copy of the electronic Title is attached hereto and incorporated herein as Exhibit "4".

9.

Defendant only made one (1) payment on the loan, in the amount of $379.39 on or about May 23, 2018. The loan was a "second" payment default.

[Page 3 of 10]

10.

The Vehicle was repossessed and sold pre-petition.  The remaining deficiency balance owed ACU is $6,405.89.

11.

Defendant's bankruptcy petition filed on the Petition Date identifies the last four digits of Defendant's Social Security Number as -2298.  Only after extending the loan to Defendant did ACU discover that Defendant provided a fraudulent Social Security Number on his March 16, 2018, Membership Application and on the credit application provided to IFS; and that Defendant was already an ACU member under the -2298 Social Security Number and had previously applied for, and was denied, a vehicle loan using that Number.

## COUNT I
### *[Fraud – 11 U.S.C. § 523(a)(2)(A)]*

12.

ACU hereby re-alleges and incorporates the preceding Paragraphs 1 through 11 in their entirety as though fully set forth herein as part of Count I.

13.

But for Defendant's representations on March 16, 2018, that his Social Security Number ends in -2918, Defendant would not have obtained membership into ACU (a second time) and would not have been eligible to obtain a loan from ACU.

14.

Upon information and belief, the Social Security Number ending in -2918 may belong to the Defendant's brother.

[Page 4 of 10]

15.

Defendant induced ACU to advance to Defendant $23,564.25 by fraudulently representing to ACU that his Social Security Number ends in -2918.

16.

Defendant knew at the time he incurred the obligation that the representations were false and that ACU would rely upon those representations in order to extend the loan to Defendant.

17.

ACU reasonably relied on Defendant's representations in extending credit to Defendant in the amount of $23,564.25 for the purpose of purchasing the Vehicle from the Dealership.

18.

Contrary to Defendant's March 16, 2018, representations, upon information and belief, Defendant's Social Security Number really ends in -2298, as reflected on his bankruptcy petition.

19.

Defendant's March 16, 2018, representations to ACU were false and materially misleading.

20.

ACU would not have extended credit to Defendant but for Defendant's false representations.

21.

Defendant acquired $23,564.25 from ACU by false pretenses and false representations by use of a writing which was materially false respecting Defendant's Social Security Number, upon

[Page 5 of 10]

which ACU reasonably relied to make the extension of credit and which Defendant caused to be made or published with the intent to deceive.  Defendant's actions constitute fraud and resulted in Defendant obtaining money, property, services, or an extension, renewal, or refinance of credit by false pretenses, false representations, or actual fraud as defined by 11 U.S.C. § 523(a)(2)(A).

22.

Based on the foregoing, the indebtedness owed to ACU in the amount of $6,405.89, post-petition interest, attorneys' fees, and all costs of Court, should be held nondischargeable in bankruptcy and should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT II
### *[Willful and Malicious – 11 U.S.C. § 523(a)(6)]*

23.

ACU hereby re-alleges and incorporates the preceding Paragraphs 1 through 22 in their entirety as though fully set forth herein as part of Count II.

24.

With full knowledge of the purpose and intent of the loan made to Defendant by ACU, Defendant willingly and intentionally provided ACU a fraudulent Social Security Number to ACU, and Defendant obtained membership into ACU (for a second time) and acquired the extension of credit of $23,564.25 by conduct constituting willful and malicious injury as defined by 11 U.S.C. § 523(a)(6).

25.

Based on the foregoing, the indebtedness owed to ACU in the amount of $6,405.89, post-petition interest, attorneys' fees, and all costs of Court, should be held nondischargeable in bankruptcy and should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

## COUNT III
### *[MONEY JUDGMENT]*

26.

ACU hereby re-alleges and incorporates the preceding Paragraphs 1 through 25 in their

entirety as though fully set forth herein as part of Count III.

27.

Defendant's actions as set forth above resulted in (i) Defendant obtaining money, property,

services, or an extension, renewal, or refinance of credit by false pretenses, false representations

or actual fraud; and/or (ii) a willful and malicious injury to ACU.

28.

ACU is entitled to a money judgment against Defendant for fraud and conversion, in the

amount of $6,405.89, plus pre-judgment interest, post-judgment interest, attorneys' fees, and all

costs of Court.

## COUNT IV
### *[Punitive Damages]*

29.

ACU hereby re-alleges and incorporates the preceding Paragraphs 1 through 28 their

entirety as though fully set forth herein as part of Count IV.

30.

Defendant's conduct and actions as averred here and above were willful and wanton. As

a result, ACU is entitled to a judgment against Defendant for punitive damages in the amount

found to be appropriate by this Court.

31.

Based on the foregoing, the award of punitive damages and the judgment granted herein should be held nondischargeable in bankruptcy and should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6).

## COUNT V
*[Attorneys' Fees – O.C.G.A. § 13-1-11]*

32.

ACU hereby re-alleges and incorporates the preceding Paragraphs 1 through 31 in their entirety as though fully set forth herein as part of Count V.

33.

Pursuant to the Agreement entered into by Defendant, the account shall be construed and enforced according to the laws of the State of Georgia.

34.

The Agreement contains a provision for reasonable attorneys' fees. ACU intends to enforce said provisions. ACU previously notified Defendant of its intention to enforce the provision pursuant to Count V of the Complaint filed in Adversary Proceeding No. 18-05242-SMS and served upon Defendant. Defendant did not pay ACU the principal and interest within ten (10) days from service of that Complaint. Pursuant to O.C.G.A. § 13-1-11, Defendant has ten (10) days from service of this Complaint within which to pay the principal and interest, without incurring any additional liability for attorneys' fees.

## COUNT VI
### *[Attorneys' Fees – O.C.G.A. § 13-6-11]*

35.

ACU hereby re-alleges and incorporates the preceding Paragraphs 1 through 34 in their entirety as though fully set forth herein as part of Count VI.

36.

Based on the acts referred to herein, Defendant has acted in bad faith and caused ACU unnecessary trouble and expense.

37.

This adversary complaint was necessitated by the actions, and non-actions, of Defendant.

38.

Based on the foregoing, ACU is entitled to a judgment against Defendant for its reasonable attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

39.

As a result of the aforementioned conduct, said attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 should be held nondischargeable in bankruptcy and as such, should be excepted from discharge.

**WHEREFORE,** ACU prays as follows:

(a) that pursuant to Count I, the debt owed to ACU in the amount of $6,405.89, plus accruing post-judgment interest, attorneys' fees, and all costs of Court, be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

[Page 9 of 10]

(b) that pursuant to Count II, the debt owed to ACU in the amount of $6,405.89, plus accruing post-judgment interest, attorneys' fees, and all costs of Court, be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(6);

(c) that pursuant to Count III, ACU be awarded a money judgment in the amount of $23,316.94, plus pre-judgment interest, post-judgment interest, attorneys' fees, and all costs of Court;

(d) that pursuant to Count IV, ACU be granted judgment for punitive damages for an amount found to be appropriate by this Court, plus interest, with same being held non-dischargeable in bankruptcy, and as such, excepted from discharge;

(e) that pursuant to Counts V and VI, ACU be awarded additional attorneys' fees and costs of litigation in this action with same being held non-dischargeable in bankruptcy, and as such, excepted from discharge; and

(f) that ACU have such other and further relief as this Court may deem just and proper.

Respectfully submitted this 13th day of August, 2019.

/s/ Albert F. Nasuti
**ALBERT F. NASUTI**
Georgia State Bar No. 535209
**MICHAEL B. PUGH**
Georgia State Bar No. 150170

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Peachtree Corners, Georgia 30092
Tel: (770) 925-0111
E-mail: anasuti@tokn.com
Attorneys for Associated Credit Union

04/09/2018  14:09        7709148907                    INFINITI                              PAGE  04/05

-22

## Membership Application

Date 3/16/18   Member Number _____        :7350        **ASSOCIATED** CREDIT UNION

☑New Membership  ☐Name Change _____

6211 Crooked Creek Road, Peachtree Corners, Georgia 30092-3107
770 418.8200 • 800.032.1027 • acuonline.org

---

**PRODUCT SELECTION (*Qualifications May Be Required)**

☑Primary Share Account   ☐_____ Checking Account   ☐Club Account   ☐CU SaveMore Account   ☐Money Market

Debit Card Selection (With Checking Only. Select One.)   ☐Debit Card   ☐Debit Card (Primary & Joint)   ☑No Cards

---

**PRIMARY APPLICANT INFORMATION**

Name _Chimwemwe K F Kamwana_   Suffix ☐Sr. ☐Jr. ☐III   ☐SSN ____ 2918   ☐TIN/ITIN _____

Physical Address _3550 pleasant hill rd # 507     Duluth GA 30096_

☐Buying/Own with Mortgage  ☐Own - Free and Clear  ☐Rent  ☐Live with Parents  ☐Government Quarters  ☐Other   Length at Address _____

Mailing Address _Same_

E-mail _Keithlameck@yahoo.com_   Home Phone _____   Cell Phone _____

Business Phone _____ Ext. _____   Date of Birth _____   Citizenship ☐U.S ☐Permanent Resident

Employment Information ☑Employed ☐Self-Employed ☐Student ☐Military ☐Retired ☐Homemaker ☐Other

Employer _Staples_   How Long? _13_   Job Title _Manager_

Identification Information ☑Driver's License ☐State Issued ID Card ☑State Issued _GA_   ☐Permanent Resident Card  ☐Military ID

ID Number _469_   Date Issued _06/09/2017_   Expiration Date _05/09/2018_

---

**JOINT APPLICANT INFORMATION**

Name _____   Suffix ☐Sr. ☐Jr. ☐III   ☐SSN _____   ☐TIN/ITIN _____

Physical Address _____

☐Buying/Own with Mortgage  ☐Own - Free and Clear  ☐Rent  ☐Live with Parents  ☐Government Quarters  ☐Other   Length at Address _____

Mailing Address _____

E-mail _____   Home Phone _____   Cell Phone _____

Business Phone _____ Ext. _____   Date of Birth _____   Citizenship ☐U.S. ☐Permanent Resident

Employment Information ☐Employed ☐Self-Employed ☐Student ☐Military ☐Retired ☐Homemaker ☐Other

Employer _____   How Long? _____   Job Title _____

Identification Information ☐Driver's License ☐State Issued ID Card ☐State Issued _____  ☐Permanent Resident Card  ☐Military ID

ID Number _____   Date Issued _____   Expiration Date _____

Joint Owner For The Following Accounts  ☐Primary Share  ☐_____ Checking  ☐_____ Club  ☐CU SaveMore  ☐Money Market

If you would like to add a Beneficiary, please fill out "Add Beneficiary To Account (ACU 128)"

---

### REQUIRED IDENTIFICATION

All owners must provide a copy of their photo driver's license or a state-issued identification card. Applications received without a signature and copies of the requested ID cannot be processed. Name changes must be accompanied by legal documents and valid ID reflecting name change.

### TIN CERTIFICATION AND BACKUP WITHHOLDING INFORMATION

By signing the SIGNATURES section, under penalties of perjury, I certify that (1) The number shown on this form is my correct taxpayer identification number, (2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, (3) I am a U.S. person (including a U.S. resident alien), and (4) FACTA exemption code not applicable.

Certification Instructions: Cross out item 2 if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. Cross out item 3 and complete a W-8 BEN if you are not a U.S. person.

I Certify That I Am  ☐Not Subject To Backup Withholding
☐Subject To Backup Withholding
☐Not A U.S. Citizen or Resident Alien (Complete W-8 Form)

### PRIMARY SIGNATURE REQUIRED

1. You certify that everything you have stated on the application or provided verbally to us in connection with this application is correct. You authorize the Credit Union to check your employment and credit history and to obtain credit reports now, and from time to time as it deems necessary, in connection with your request for membership or for any update. You understand the Credit Union will rely on the information on this application and in your credit reports to make its decision. If there are any important changes, you will notify us in writing immediately. You also agree to notify us of any change in your name, address or employment within a reasonable time thereafter.

2. By signing below you acknowledge receipt of a copy of the Account Agreements & Disclosures, which contain Account Agreements and Disclosures, Truth-In-Savings Disclosure, Member Overdraft Privilege Policy, Funds Availability Disclosure, Electronic Funds Transfer Agreement and Disclosure, Privacy Policy, eNotice Disclosure and Fair and Accurate Credit Transactions Disclosure.

3. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

4. You hereby make application for membership in and agree to conform to the Bylaws, or any amendment thereof, of Associated Credit Union.

---

**IMPORTANT NOTICE**

Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. When you open an account, we ask for information that will allow us to identify you. We will also ask to see your driver's license or other identifying documents.

_____   3-16-18
Primary Member Signature       Date

_____   _____
Joint Owner Signature       Date

ACU 3210 (Rev 1/17)

EXHIBIT
1
tabbies



**INFINITI FINANCIAL SERVICES**

Credit Application

*Signature*FINANCING*

**DEALER INFORMATION**   *PLEASE USE BLACK INK*

DEALER NAME                                    DEALER NUMBER              PROGRAM TYPE:

**APPLICANT INFORMATION (MARRIED MAY APPLY AS AN INDIVIDUAL)**

APPLICANT *(PRINCIPAL DRIVER OF VEHICLE)*          JOINT APPLICANT RELATIONSHIP _____

| FULL NAME | FIRST | MI | LAST | SR JR | FULL NAME | FIRST | MI | LAST | SR JR |
|---|---|---|---|---|---|---|---|---|---|
| | CHIMWEMWE | | KAMWANA | | | | | | |

| STREET ADDRESS | APT # | HOW LONG? | STREET ADDRESS | APT # | HOW LONG? |
|---|---|---|---|---|---|
| 3550 PLEASANT HILL RD # 507 | | 4 years 2 Months YRS. MOS. | | | YRS. MOS. |

| CITY | STATE | ZIP | HOME PHONE | CITY | STATE | ZIP | HOME PHONE |
|---|---|---|---|---|---|---|---|
| Duluth | GA | 30096 | | | | | ( ) |

| DATE OF BIRTH | AGE | SOCIAL SECURITY NUMBER | DATE OF BIRTH | AGE | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|
| | | - 2918 | | | |

| OWN/BUYING | LIVE WITH RELATIVE | MONTHLY PAYMENT | OWN/BUYING | LIVE WITH RELATIVE | MONTHLY PAYMENT |
|---|---|---|---|---|---|
| ☒ RENT/LEASE | OTHER | $ 800 | RENT/LEASE | OTHER | $ |

**EMPLOYMENT**

| EMPLOYER NAME | HOW LONG? | EMPLOYER NAME | HOW LONG? |
|---|---|---|---|
| STAPLES | 13 YRS. MOS. | | YRS. MOS. |

| EMPLOYER ADDRESS | EMPLOYER ADDRESS |
|---|---|
| 3550 PLEASANT HILL RD, DULUTH GA 30096 | |

| POSITION/TITLE | WORK PHONE | GROSS ANNUAL SALARY | POSITION/TITLE | WORK PHONE | GROSS ANNUAL SALARY |
|---|---|---|---|---|---|
| MANAGER | | $ 85,000 | | ( ) | $ |

ALIMONY, CHILD SUPPORT OR SEPARATE MAINTENANCE INCOME NEED NOT BE REVEALED, IF YOU DO NOT WISH TO HAVE IT CONSIDERED AS A BASIS FOR REPAYING THIS DEBT.

| OTHER INCOME SOURCE | ANNUAL AMOUNT | OTHER INCOME SOURCE | ANNUAL AMOUNT |
|---|---|---|---|
| | $ | | $ |

| PREVIOUS EMPLOYER OR SCHOOL | HOW LONG? | PREVIOUS EMPLOYER OR SCHOOL | HOW LONG? |
|---|---|---|---|
| | YRS. MOS. | | YRS. MOS. |

**REFERENCES**

| AUTO CREDIT REFERENCE (A/C #) | TRADING? | BALANCE | AUTO CREDIT REFERENCE (A/C #) | TRADING? | BALANCE |
|---|---|---|---|---|---|
| | YES (NO) | $ | | YES NO | $ |

| OTHER CREDIT REFERENCE | BALANCE | OTHER CREDIT REFERENCE | BALANCE |
|---|---|---|---|
| | $ | | $ |

| NEAREST RELATIVE (NOT LIVING WITH YOU) | RELATIONSHIP | NEAREST RELATIVE (NOT LIVING WITH YOU) | RELATIONSHIP |
|---|---|---|---|
| LUNGI MKERONGO | | | |

| ADDRESS | PHONE | ADDRESS | PHONE |
|---|---|---|---|
| 3550 PLEASANT HILL RD # 507 | ( ) | | ( ) |

| FRIEND OR RELATIVE | PHONE | FRIEND OR RELATIVE | PHONE |
|---|---|---|---|
| BROTHER | ( ) | | ( ) |

**SIGN**

NOTICE: I, THE UNDERSIGNED, HEREBY AUTHORIZE THE DEALER, INFINITI FINANCIAL SERVICES, NISSAN-INFINITI LT AND/OR

_CHIMWEMWE KAMWANA_ (COLLECTIVELY "PROSPECTIVE CREDITORS") TO VERIFY CREDIT AND EMPLOYMENT HISTORY AS STATED ABOVE AND TO ANSWER QUESTIONS ABOUT CREDIT EXPERIENCE WITH ME. IF THIS APPLICATION IS MADE PURSUANT TO ANY CREDIT PROGRAM FOR ATTENDEES AND/OR GRADUATES OF SCHOOLS OR EDUCATIONAL INSTITUTIONS, THEN PROSPECTIVE CREDITORS MAY VERIFY MY ELIGIBILITY FOR SUCH PROGRAM, INCLUDING BY INQUIRY TO MY SCHOOL(S) OR EDUCATIONAL INSTITUTION(S). INSURANCE RELATED TO THE CREDIT FOR WHICH I AM APPLYING MAY BE PURCHASED FROM AN INSURER OR AGENT OF MY CHOICE WHO MEETS PROSPECTIVE CREDITOR STANDARDS. IN CONNECTION WITH THIS APPLICATION FOR CREDIT, PROSPECTIVE CREDITORS MAY REQUEST A CONSUMER (CREDIT) REPORT. ON MY REQUEST, PROSPECTIVE CREDITORS WILL ADVISE ME IF THE REPORT WAS ACTUALLY ORDERED AND IF SO, THE NAME AND ADDRESS OF THE AGENCY THAT FURNISHED THE REPORT. PROSPECTIVE CREDITORS MAY ORDER SUBSEQUENT CONSUMER (CREDIT) REPORTS.

I AUTHORIZE PROSPECTIVE CREDITORS TO ASK MY PAST AND CURRENT CREDITORS ("CREDIT REFERENCES"), INCLUDING CREDITORS LISTED ABOVE OR ON MY CONSUMER (CREDIT) REPORT, ABOUT MY CREDIT PERFORMANCE WITH THEM. PROVISION BY PROSPECTIVE CREDITORS OF A COPY OF THIS AUTHORIZATION SHALL SERVE AS MY DIRECTION THAT MY CREDIT REFERENCES PROVIDE MY CREDIT PERFORMANCE INFORMATION.

EVERYTHING THAT I HAVE STATED IN THIS APPLICATION IS COMPLETE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND CONSTITUTES MY ENTIRE APPLICATION FOR CREDIT WITH THE PROSPECTIVE CREDITORS. I UNDERSTAND THAT PROSPECTIVE CREDITORS WILL RETAIN THIS APPLICATION WHETHER OR NOT IT IS APPROVED. I WILL NOTIFY PROSPECTIVE CREDITORS, IF APPLICABLE, WITHIN A REASONABLE TIME OF ANY CHANGE IN MY NAME, ADDRESS OR EMPLOYMENT.

TO THE EXTENT PERMITTED BY LAW, I CONSENT THAT YOU, YOUR ASSIGNEES, AND YOUR AGENTS MAY CONTACT ME AT ANY TELEPHONE NUMBER YOU HAVE FOR ME, INCLUDING ANY CELL PHONE NUMBERS AND ANY PHONE NUMBERS LISTED ON THIS DOCUMENT. BY ANY MEANS YOU SELECT, INCLUDING AN AUTOMATIC TELEPHONE DIALING SYSTEM, TEXT MESSAGING, AND/OR AN ARTIFICIAL OR PRE-RECORDED VOICE.

X _____  _____  3/16/2018
SIGNATURE OF APPLICANT        DATE

CO-APPLICANT'S SIGNATURE FOR JOINT CREDIT.

X _____
SIGNATURE OR _____

**EXHIBIT**

tabbies

2

**LAW** 553-GA-eps 9/15

## RETAIL INSTALLMENT SALE CONTRACT
### SIMPLE FINANCE CHARGE

Dealer Number _____ 0308 _____     Contract Number _____ 967 _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| CHIMWEMWE KEITH ELIAD KAMWANA<br>3550 PLEASANT HILL RD APT 507<br>DULUTH,   GA 30096<br>GWINNETT |  | INFINITI OF GWINNETT<br>3090 SATELLITE BLVD<br>DULUTH, GA 30096<br>678/812 8500 |

You, the Buyer (and Co-Buyer, If any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements In this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" In this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2015 | INFINITI Q50 | JN1BV7APXFM337780 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural   ☒ PERSONAL |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1500.00 is |
|---|---|---|---|---|
| 4.99% | $ 3751.83 | $ 23564.25 | $ 27316.08 | $ 28816.08 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 379.39 | Monthly beginning 04/15/2018 |

Or As Follows: N/A

Late Charge. If payment is not received In full within __10__ days after it is due, you will pay a late charge of $ __50.00__ or __5__ % of the part of the payment that is late, whichever is less.

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security Interest In the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security Interest.

Used Car Buyers Guide. The information you see on the window form for this vehicle Is part of this contract. Information on the window form overrides any contrary provisions In the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

Returned Check Charge: You agree to pay a charge equal to the greater of $30 or 5% of the check amount if any check you give us is dishonored and we make written demand that you do so.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance): If the preceding box is checked, the Creditor requires VSI Insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI Insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI Insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this Insurance is $N/A_____ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it If the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If the goods or services are obtained primarily for business or agricultural use, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract, unless the law allows it.

03/16/2018  05:32 pm

Buyer Signs X _____   Co-Buyer Signs X

EXHIBIT

tabbies

3-1

## ITEMIZATION OF AMOUNT FINANCED

1  Cash Price (including taxes of $ _____ 1439.25)                              $ 22421.25 (1)
2  Total Downpayment =
   Trade-in  N/A
            (Year)        (Make)              (Model)

   Gross Trade-in Allowance                                          $ ___ N/A ___
   Less Pay Off Made By Seller                                       $ ___ N/A ___
   Equals Net Trade In                                               $ ___ N/A ___
   + Cash                                                            $ 1800.00
   + Other ___ N/A ___                                               $ ___ N/A ___
   (if total downpayment is negative, enter "0" and see 4I below)    $ 1800.00 (2)
3  Unpaid Balance of Cash Price (1 minus 2)                          $ 20921.25 (3)
4  Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A  Cost of Optional Credit Insurance Paid to Insurance
      Company or Companies.
      Life                            $ _____ N/A
      Disability                      $ _____ N/A      $ ___ N/A ___
   B  Vendor's Single Interest Insurance Paid to Insurance Company   $ ___ N/A ___
   C  Other Optional Insurance Paid to Insurance Company or Companies $ ___ N/A ___
   D  Optional Gap Contract                                          $ ___ N/A ___
   E  Official Fees Paid to Government Agencies
      to _____ for _____                          $ ___ N/A ___
      to _____ for _____                          $ ___ N/A ___
      to _____ for _____                          $ ___ N/A ___
   F  Government Taxes Not Included in Cash Price                    $ ___ N/A ___
   G  Government License and/or Registration Fees                    $ 111.00
   H  Government Certificate of Title Fees                           $ 18.00
   I  Other Charges (Seller must identify who is paid and
      describe purpose.)
      to  N/A               for Prior Credit or Lease Balance        $ ___ N/A ___
      to  N/A               for  N/A                                 $ ___ N/A ___
      to  EPP               for  SERVICE CONTRACT                    $ 1915.00
      to  INFINITI OF GWINNETT  for  DOCUMENTATION FEE               $ 599.00
      to  N/A               for  N/A                                 $ ___ N/A ___
      to  N/A               for  N/A                                 $ ___ N/A ___
      to  N/A               for  N/A                                 $ ___ N/A ___
      to  N/A               for  N/A                                 $ ___ N/A ___
      to  N/A               for  N/A                                 $ ___ N/A ___
      to  N/A               for  N/A                                 $ ___ N/A ___
      Total Other Charges and Amounts Paid to Others on Your Behalf  $ 2843.00 (4)
5  Amount Financed (3 + 4)                                           $ 23764.25 (5)

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before
_____ N/A _____ , Year ___ N/A ___ . SELLER'S INITIALS _____

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain
credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose
to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your
gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ____ N/A ____ Mos.     _____ N/A _____
                                              Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

---

Insurance. You may buy the physical damage insurance this
contract requires from anyone you choose who is authorized to sell
such insurance in Georgia. You are not required to buy any other
insurance to obtain credit unless the box indicating Vendor's Single
Interest Insurance is required is checked on page 1 of this contract.
   If any insurance is checked below, policies or certificates
from the named insurance companies will describe the terms and
conditions.

Check the insurance you want and sign below:

### Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
   Credit Life $ _____ N/A
   Credit Disability $ _____ N/A
Insurance Company Name
   N/A
Home Office Address
   N/A

Credit life insurance and credit disability insurance are not
required to obtain credit. Your decision to buy or not buy credit life
insurance and credit disability insurance will not be a factor in the
credit approval process. They will not be provided unless you sign
and agree to pay the extra cost. If you choose this insurance, the
cost is shown in Item 4A of the Itemization of Amount Financed.
Credit life insurance is based on your original payment schedule.
This insurance may not pay all you owe on this contract if you
make late payments. Credit disability insurance does not cover
any increase in your payment or in the number of payments.
Coverage for credit life insurance and credit disability insurance
ends on the original due date for the last payment unless a
different term for the insurance is shown below.

### Other Optional Insurance

☐ _____ N/A _____
      Type of Insurance           Term
Premium $ _____ N/A
Insurance Company Name
      N/A
Home Office Address
      N/A

☐ _____ N/A _____
      Type of Insurance           Term
Premium $ _____ N/A
Insurance Company Name
      N/A
Home Office Address
      N/A

Other optional insurance is not required to obtain credit. Your
decision to buy or not buy other optional insurance will not be a
factor in the credit approval process. It will not be provided unless
you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____
Buyer Signature                 Date

X _____
Co-Buyer Signature              Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE
ON YOUR LIABILITY FOR BODILY INJURY OR
PROPERTY DAMAGE CAUSED TO OTHERS.**

---

Buyer Signs X _____  Co-Buyer Signs X ___ N/A ___

3-2

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**

   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**

   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   Buyer Signs X _____ Co-Buyer Signs X  N/A

   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.
   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   If you pay late, we may also take the steps described below.

   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay 15% of the amount you owe as attorney's fees, plus court costs. We will charge only attorney's fees and court costs the law permits.

   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.    03/16/2018. 08-22 —

3-3

e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

6. **APPLICABLE LAW**
Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.

Buyer Signs X _____   Co-Buyer Signs X _____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See the rest of this contract for other important agreements.

NOTICE TO THE BUYER: Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the contract you sign.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 03/16/2018 Co-Buyer Signs X _____ Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Date _____ Address _____

Seller signs __INFINITI OF GWINNETT__ Date 03/16/2018 By X _____ Title _____

Seller assigns its interest in this contract to __ASSOCIATED CREDIT UNION__ (Assignee) under the terms of Seller's agreement with Assignee.

☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse

Seller __INFINITI OF GWINNETT__ By _____ Title _____

LAW FORM NO. 553-GA-eps   U.S. PATENT NO. D460703
03/16/2018, 05:32 pm
LAW 553-GA-eps 8/15 V1   Page 4 of 4

3-4

Run On: Aug 2, 2018 7:16:54 AM



## Lien and Title Information Report
### 4743-Associated Credit Union

| | | | |
|---|---|---|---|
| Account No. | -0055 | VIN | JN1BV7APXFM337780 |
| Loan No. | | Branch | |
| Loan Suffix | | | |
| Customer | CHIMWEMWE K KAMWANA | | |
| Organization ID | 4743 | Organization Name | Associated Credit Union |
| Lien Start | 04/12/2018 | Lien End | |
| Original Loan Amount | $0.00 | Lien Balance Amount | $0.00 |
| Lien Type | Retail | Dealer ID | |

### Last ELT Transactions

Received On
2018-07-25 06:43:33.0

Delete Record - Printed

### Borrower / Lesee Details

Name          CHIMWEMWE K KAMWANA

Address       3550 PLEASANT HILL ROAD, UNIT 507,DULUTH GA,30096

### Vehicle Information

| | | | |
|---|---|---|---|
| Vehicle Type | Auto | Make | INFINITI |
| Model | Q50 | Year | 2015 |
| Mileage | 0 | | |

### Title Information

| | | | |
|---|---|---|---|
| Title Number | 777623181026963 | Title State | GA |
| Tag Number | | VIN | JN1BV7APXFM337780 |
| Status | MATCHED | Match Date | 04/25/2018 |
| Lien Expiration Date | | Media Type | Paper |

### State Information

Name          KAMWANA,CHIMWEMWE KEITH ELIAD          Lessee

Address       3550 PLEASANT HILL RD,APT 507,DULUTH
              GA,300964874

| | | | |
|---|---|---|---|
| Vehicle Type | | Make | INFI |
| Model | | Year | 2015 |
| Mileage | 0 | | |
| Title State | GA | Title Number | 777623181028963 |
| Brands | | | |

Page: 1



EXHIBIT

4